UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>COREL CORPORATION, et al.,<br><br>Defendants. | Case No. 5:15-cv-05836-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S DAMAGES EXPERT**<br><br>Re: Dkt. No. 169 |

Defendants Corel Corporation and Corel Inc. move to exclude certain opinions of Plaintiff Microsoft Corporation's damages expert under Fed. R. Evid. 702. Corel's motion will be granted.

**I. BACKGROUND**

On March 30, 2017, Microsoft submitted the report of its damages expert, Ambreen Salters. Defs.' Mot. to Exclude Certain Opinions of Pl.'s Damages Expert ("Mot.") Ex. A

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF
PLAINTIFF'S DAMAGES EXPERT

1

("Salters Report"), Dkt. No. 169-2. Corel has not submitted a rebuttal report or a damages report of its own. Pl.'s Opp'n to Defs.' Mot. to Exclude ("Opp'n") 2, Dkt. No. 185.

In her report, Salters adopted the "hypothetical negotiation" approach to "ascertain the royalty upon which the parties would have agreed had they successfully negotiated a license agreement just before the infringement began." Id. Salters based her royalty analysis on a "design-around" theory, under which she estimated the amount it would have cost Corel to design around the utility patents that Microsoft asserts in this case. Id. at 2–3; Mot. 1. Corel now moves under Fed. R. Evid. 702 to exclude two parts of Salters's report relating to (1) the hypothetical cost to Corel to design around Microsoft's asserted patents and (2) the implementation of her proposed alternative non-infringing designs. Id. 1–2.

## II. LEGAL STANDARD

Fed. R. Evid. 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

## III. DISCUSSION

### A. Salters's Use of Microsoft's Cost Estimates

Salters calculated Microsoft's damages on the basis of the "hypothetical negotiation" approach, under which "the parties are presumed to be a willing licensor and a willing licensee negotiating a reasonable royalty for the patents-in-suit at a time when infringement first began." Opp'n 6 (citing Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301 (Fed. Cir. 2009)). As part of her analysis, Salters considered Corel's "design-around" cost, which is the amount of money Corel

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF
PLAINTIFF'S DAMAGES EXPERT

2

would need to spend to build a non-infringing alternative to the software features embodied in Microsoft's patents. Mot. 3; Opp'n 3, 6. Corel agrees that the "hypothetical negotiation" methodology is an appropriate way to calculate reasonable royalties. Opp'n 6–7.

In her report, Salters describes two possible damages scenarios:

- <u>Scenario 1</u>: Corel would spend $600,000. This is the cost of a <u>Microsoft</u> engineer multiplied by the time it would take a Microsoft engineer to write the code.
- <u>Scenario 2</u>: Corel would spend $300,000. This is the cost of a <u>Corel</u> engineer multiplied by the time it would take a Microsoft engineer to write the code.

Mot. 3.

Here, Corel moves to exclude Scenario 1. Corel does not challenge Salters's estimates of the time or money that it would spend under either scenario. Defs.' Reply in Support of Mot. to Exclude ("Reply") 5, Dkt. No. 194. Nor does Corel challenge the accuracy of Salters's calculations. <u>Id.</u> Rather, Corel argues there is no basis for Salters to rely on Microsoft's engineering costs as a measure of damages. <u>Id.</u> Salters's methodology assumes that Corel and Microsoft would behave as economically rational actors in a hypothetical licensing negotiation. Salters Report ¶ 50. Corel argues that Salters "provides no 'sufficient facts or data' " to support her position that Scenario 1 "would have been considered by Corel in this hypothetical negotiation." Reply 5 (citing Fed. R. Evid. 702(b)). "[I]t is hard to imagine," Corel argues, "why Corel would hire a Microsoft engineer, when Ms. Salters conceded Corel's own engineers could design around the asserted patents, <u>at half the cost</u>." <u>Id.</u> at 6 (emphasis in original). Because Salters does not explain why Corel would have considered Scenario 1 in the hypothetical negotiations, Corel argues, Scenario 1 lacks a sufficient factual basis and must be excluded. <u>Id.</u>

Microsoft responds that Corel refused to provide "design-around cost information during discovery." Pl.'s Opp'n to Defs.' Mot. to Exclude ("Opp'n") 7, Dkt. No. 185. Because Salters could not get cost information from Corel, she decided to speak with Microsoft engineers to determine the amount of time they would take to implement the design-around code. <u>Id.</u> at 8. She

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S DAMAGES EXPERT

3

multiplied that number by the cost of Microsoft engineers, which amounted to roughly $600,000 (as described in Scenario 1). She then "performed an alternative calculation using Microsoft's time estimates multiplied by Corel's engineering costs," which amounted to roughly $300,000 (as described in Scenario 2).[1]

Salters presents Scenario 2 as "a potential data point the jury may wish to consider" when evaluating damages. Id. at 8–9. The report states, without further explanation, that "Microsoft and Corel would have considered the estimated design-around cost of $600,000, or in the alternative, $300,000." Salters Report ¶¶ 82, 117. At her deposition, Salters was unable to explain why Corel would rationally pay more than its own design-around costs. Salters Dep., Dkt. No. 169-3 at 36–38. She argues (as Microsoft argues here) that she had no choice but to rely on Microsoft's time estimates because Corel's witnesses could not provide a comparable estimate of Corel's engineering time. Id. at 36. That argument fails for two reasons. First, if Microsoft believed that Corel provided insufficient information about Corel's design-around time estimates, Microsoft could have conducted discovery on that issue; and if Microsoft believed Corel's responses to those discovery requests were inadequate, Microsoft could have moved to compel. Second, in any event, Salters's report does not explain why Scenario 1 would be an economically rational choice for Corel in a hypothetical licensing negotiation. Salters Report ¶ 50.

As such, the Court finds that Scenario 1 must be excluded under Fed. R. Evid. 702. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

**B.     Salters's Estimate of the Cost of Designing Around the '980 Patent**

Salters based her report on non-infringing alternative designs proposed by Microsoft's

---

[1] The parties agree that the time of a Microsoft engineer costs twice as much as the time of a Corel engineer.

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S DAMAGES EXPERT

4

technical expert, Dr. Daniel Menasce. Salters Report ¶ 78. Dr. Menasce described two designs that would avoid infringing the asserted claims of the '980 patent. Menasce Report ¶¶ 47–48, Dkt. No. 169-4. First, Dr. Menasce proposed a "manual selection" design, in which the user would manually select the range of cells to be added together. Id. ¶ 47. Second, he proposed a "separate pane" design, in which the sum would be displayed in a separate pane instead of in the user's chosen cell. Id. ¶ 48. Dr. Menasce's report states that either design, on its own, would constitute a non-infringing alternative. Id. ¶¶ 47–48 ("[A] non-infringing alternative" would be the manual selection design, and "[a]nother non-infringing alternative" would be the separate pane design) (emphasis added).

In her report, Salters estimates that the cost of designing around the '980 patent would be $150,000 (for a Microsoft engineer) or $75,000 (for a Corel engineer). Mot. 3. She based this figure on the amount of time it would take a Microsoft engineer to implement the manual selection design that Dr. Menasce proposed. Salters Report ¶¶ 78–79. That portion of her report does not mention the separate pane design. In her deposition, however, Salters said that her cost estimate was based on the time it would take a Microsoft engineer to implement a combination of the two designs that Dr. Menasce proposed. Mot. 5–6 (quoting Salters's deposition testimony).

Corel argues that Salters's estimate of the cost of designing around the '980 must be excluded because it is not supported by "sufficient facts or data." Mot. 6–7; see also Fed. R. Evid. 702(b). The Court agrees. Dr. Menasce's report is clear that the "manual selection" and "separate pane" designs are separate, independent alternatives to the design embodied in the asserted claims of the '980 patent. Menasce Report ¶¶ 47–48. Salters admits, however, that her computation is based on the amount of time it would take a Microsoft engineer to implement both designs in combination. Salters Dep. 28:13–29:5. As such, Salters's cost estimate must be excluded because it does not accurately represent the cost of implementing a non-infringing alternative to the design embodied in the '980 patent.

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S DAMAGES EXPERT

5

## IV. CONCLUSION

Corel's motion to exclude opinions of Ambreen Salters, Microsoft's damages expert, is GRANTED to the extent discussed above.

**IT IS SO ORDERED.**

Dated: December 11, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF PLAINTIFF'S DAMAGES EXPERT