UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>COREL CORPORATION, et al.,<br><br>Defendants. | Case No. 5:15-cv-05836-EJD<br><br>**ORDER GRANTING MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 170 |

Plaintiff Microsoft Corporation moves for partial summary judgment on most of the counterclaims and affirmative defenses raised by Defendants Corel Corporation and Corel Inc. (together, "Corel"). Microsoft's motion will be granted.

**I.    BACKGROUND**

Microsoft alleges that Corel infringed nine patents relating to graphical user interfaces in software applications.[1] Compl. ¶¶ 1–2, Dkt. No. 1. Corel concedes that the asserted patents are valid and that it directly infringed every asserted claim, but it raises several affirmative defenses

---

[1] For a more detailed summary of the factual and procedural background of this case, see this Court's order on Corel's motion for summary judgment, Dkt. No. 153.

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
1

and counterclaims. Second. Am. Answer, Dkt. No. 121. Microsoft now moves for summary judgment on all of Corel's affirmative defenses and counterclaims (with the exception of Corel's seventh affirmative defense for failure to meet the requirements of 35 U.S.C. § 287). Pl.'s Mot. for Summ. J. ("MSJ"), Dkt. No. 170.

## II. LEGAL STANDARD

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Samuels v. Holland American Line—USA Inc., 656 F.3d 948, 952 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). The Court "must draw all reasonable inferences in favor of the nonmoving party." Id. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## III. DISCUSSION

Corel's affirmative defenses and counterclaims fall into three groups:[2]

(A) those related to the '980 patent;[3]

(B) those related to the "ribbon patents";[4] and

(C) Corel's counterclaim XXIV, which asserts that this action is an "exceptional case" under 35 U.S.C. § 285.

### A. '980 Patent

With respect to the '980 patent, Corel asserts its first, fifth, sixth,[5] fourteenth, and fifteenth affirmative defenses and counterclaims XIV, XX, and XXIII. Dkt. No. 188-2.

---

[2] In Exhibit 1 attached to its opposition brief, Corel provided a table listing its remaining affirmative defenses and counterclaims and indicating the asserted patents to which they apply. Dkt. No. 188-2.
[3] U.S. Patent No. 5,510,980.
[4] U.S. Patent Nos. 8,255,828; 7,703,036; D550,237; D554,140; D564,532; and D570,865.
[5] As discussed below, Corel also asserts its fifth and sixth affirmative defenses with respect to the ribbon patents.

### i. First Affirmative Defense (Failure to State a Claim) and Counterclaim XX (Antitrust)

Corel has withdrawn its first affirmative defense and counterclaim XX. Defs.' Opp'n to Pl.'s Mot. for Summ. J. ("Opp'n") 3, Dkt. No. 188. Microsoft's motion for summary judgment will be granted as to that defense and that counterclaim.

### ii. Fourteenth Affirmative Defense (Express License) and Counterclaim XIV (Declaratory Judgment of Non-Infringement)

Corel argues that it should prevail on its counterclaim XIV (for declaratory judgment of non-infringement) because Microsoft and Corel had entered into a covenant not to sue.[6] Id. 10–12. According to Corel, the covenant provides that Microsoft cannot sue Corel for infringement of the '980 patent that occurred while the covenant was in effect. Id. Although several "termination events" could have retroactively terminated the covenant, Corel argues that no such event occurred. Id. Alternatively, Corel argues that it should prevail on its fourteenth affirmative defense (for express license) because the covenant not to sue was an express license from Microsoft to Corel to practice the '980 patent. Id. at 14–19.

Corel's arguments amount to an improper motion for reconsideration[7] of this Court's order denying Corel's motion for partial summary judgment on the defense of express license. Dkt. No. 154. In that order, the Court found that the covenant not to sue explicitly states that it is not a patent license. See id. at 5 ("The foregoing covenant does not constitute a patent license to Corel, and except as explicitly set forth above, Microsoft does not, directly or by implication, estoppel or otherwise, grant any other patent covenants or patent rights under this Agreement.") (quoting the language of the covenant) (emphasis added). The Court agreed with Microsoft's position that that the covenant was a promise to delay suit, rather than a promise to never sue. Id. at 3.

Here, in its brief opposing Microsoft's motion for summary judgment, Corel disagrees

---

[6] The covenant not to sue is discussed in detail in the Court's order denying Corel's motion for partial summary judgment. Dkt. No. 154.
[7] See Local Rule 7-9(b) ("A motion for leave to file a motion for reconsideration must be made in accordance with the requirements of Civil L.R. 7-9.").

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
3

with the Court's analysis in its order denying Corel's summary judgment motion. Opp'n 14–19. Corel's disagreement, however, does not warrant reconsideration of the Court's decision. See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."); see also Local Rule 7-9(b).

Corel has not established a basis for reconsideration. It presents no new evidence; it does not assert that the Court committed clear error or that its decision was manifestly unjust; and it points to no intervening change in controlling law. As such, Microsoft's motion for summary judgment will be granted as to Corel's fourteenth affirmative defense and counterclaim XIV.

### iii. Fifth Affirmative Defense (Waiver) and Sixth Affirmative Defense (Acquiescence)

To prevail on its waiver defense, Corel must show that Microsoft "intentionally relinquished its rights to enforce the rights it now asserts. Waiver of a known right must be 'manifested by some overt act indicating an intention to abandon that right.' " Oracle Am., Inc. v. Google Inc., No. C 10-03561 WHA, 2012 WL 1965778, at *2 (N.D. Cal. May 31, 2012) (quoting Micro Star v. Formgen, Inc., 154 F.3d 1107, 1114 (9th Cir. 1998)).

Similarly, to prevail on its acquiescence defense, Corel must show that Microsoft made "an affirmative grant of consent or permission" to Corel's conduct that gave rise to an implied license to practice the '980 patent. Oracle, 2012 WL 1965778, at *1; see also Wang Labs., Inc. v. Mitsubishi Elecs., 103 F.3d 1571, 1581–82 (Fed. Cir. 1997).

Here, Corel argues that the covenant not to sue contained certain "retroactive termination" provisions. Opp'n 13. Under those provisions, if certain "termination events" occurred, Microsoft would be "authorized to retroactively unwind its covenant and sue Corel for any past infringing activity." Id. One such termination event was a change in control of Corel Corporation. Id. Corel argues that a change in control occurred when Vector Capital acquired Corel Corporation in 2003.

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
4

Id. This event triggered the retroactive termination provisions, which gave Microsoft the right to sue for past infringing activity. Id. However, at the time, Microsoft chose not to sue. Id. at 13–14. As a result, Corel argues, Microsoft consented or acquiesced to Corel's infringement of the '980 patent. Id.

Corel's argument fails because Microsoft did not perform an "overt act" indicating its intention to abandon its right to sue for infringement. See Oracle, 2012 WL 1965778, at *2. Nor did Microsoft give "an affirmative grant of consent or permission" to Corel's infringing conduct. Id. at *1. As Microsoft points out, when the termination event occurred (i.e., when Vector acquired Corel Corporation in 2003), Microsoft had no obligation "to acknowledge that the covenant had terminated, or to file suit against Corel immediately upon termination." Pl.'s Reply in Support of Mot. for Summ. J. ("Reply") 6, Dkt. No. 196. Rather, the "covenant simply self-terminated automatically." Id. As discussed above, the covenant was a promise to delay suit for past infringing activity, not a promise to never sue. When the termination event occurred, Microsoft had two options: first, it could sue immediately; and second, it could sue at some later time, either while the covenant was still in effect or after the covenant expired. Microsoft chose to wait until the covenant was no longer in effect, at which point it decided to exercise its right under the covenant to bring claims against Corel for past infringement. Microsoft's decision did not constitute abandonment of its right to sue, nor did it constitute consent to Corel's infringing activity. Rather, it was an appropriate exercise of its rights under the covenant. Microsoft is therefore entitled to summary judgment on Corel's fifth and sixth affirmative defenses.

### iv. Fifteenth Affirmative Defense (Exhaustion) and Counterclaim XXIII (Exhaustion)

Under the doctrine of patent exhaustion, "the initial authorized sale of a patented item terminates all patent rights to that item." Bowman v. Monsanto Co., 569 U.S. 278, 283 (2013) (quoting Quanta Computer, Inc. v. LG Electronics, Inc., 553 U.S. 617, 625 (2008)). "[B]y exhausting the patentee's monopoly in that item, the sale confers on the purchaser, or any

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
5

subsequent owner, the right to use or sell the thing as he sees fit." Id. (quoting United States v. Univis Lens Co., 316 U.S. 241, 249–50 (1942)).

Corel has not alleged any facts showing that Microsoft (or a Microsoft licensee) sold any products accused of infringing the '980 patent to Corel. See MSJ 9; Reply 4–5. Without evidence of a sale, Corel's affirmative defense of exhaustion and its counterclaim for exhaustion fail as a matter of law.

Nonetheless, Corel argues that "Microsoft's rights under the '980 patent were exhausted when the '980 patent expired, because there was no past infringement according to the covenant [not to sue]." Opp'n 12. Corel does not explain how the doctrine of patent exhaustion supports this reading of the covenant. To the extent Corel is arguing that Microsoft's rights to sue for past infringement terminated upon expiration of the covenant, Corel's argument fails because, as discussed above, this Court has previously held that Microsoft was free to sue for past infringement of the '980 patent upon expiration of the covenant. Corel has not established a basis for reconsideration of that decision. Microsoft is therefore entitled to summary judgment on Corel's fifteenth affirmative defense and counterclaim XXIII.

### B. Ribbon Patents

With respect to the ribbon patents, Corel asserts its fifth, sixth, eighth, ninth, and thirteenth affirmative defenses. Dkt. No. 188-2.

**i. Fifth Affirmative Defense (Waiver), Sixth Affirmative Defense (Acquiescence), Ninth Affirmative Defense (Implied License), and Thirteenth Affirmative Defense (License under Microsoft's UI Licensing Program)**

Corel bases these four affirmative defenses on "Microsoft's conduct in licensing the Ribbon Patents generally in the market and specifically to Corel." Opp'n 5.

During the relevant period, Microsoft operated two licensing programs that allowed third-party software developers to practice the ribbon patents. First, beginning in 2007, Microsoft offered royalty-free licenses to third parties. Id. at 5–6. Under the 2007 program, software

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
6

developers could sign up for licenses through a publicly available web portal. Id. Certain types of software were not eligible for the license, including products that competed directly with Microsoft's Office software. Id. at 6.

Corel was ineligible for a license under the 2007 program because its accused products competed directly with Microsoft Office (with the exception of Corel's CorelCAD software, as discussed below). Corel argues that Microsoft cannot enforce this exclusion against Corel because it cannot identify other licensees under the program, it cannot produce copies of licenses, it has no evidence that it ever rejected a license, and it does not explain how it prevented other competitors from obtaining licenses. Id. at 5–6 But, as Microsoft notes, those facts are irrelevant. Reply 9–10. They have no bearing on whether Corel itself had a license. Id. The evidence shows (and Corel does not dispute) that Corel's software did not meet the requirements of the 2007 licensing program because it competed directly with Microsoft Office. Id. Corel therefore did not have a license under the 2007 program.

Second, in 2009, Microsoft revised its licensing system to allow all developers to use the ribbon interface, including developers of products that competed with Microsoft Office. Opp. 6. To qualify for the license, third parties were required to use Microsoft's Windows 7 Ribbon APIs. Reply 10.

Corel did not have a license under the 2009 program. Microsoft points out—and Corel does not dispute—that Corel did not use the Windows 7 Ribbon APIs. Id. Instead, Corel implemented its own "homegrown, infringing ribbon" that imperfectly copied the functionality of Microsoft's patented interface. Id. Corel's software was thus ineligible for a license under the 2009 program.

However, Corel argues that it did have a license because, in 2009, Microsoft began encouraging Corel to use Microsoft's ribbon interface in its products. Opp'n 7. For instance, in 2010, Microsoft sent an email to Corel's general counsel that stated:

> Microsoft would like to see Corel evaluate the Microsoft Windows

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
7

> Ribbon Framework and where it would fit in your future product plans. We'd also like to have an introduction to the vendor whom you are licensing Home Office from so that we can have a similar conversation with them.

Id. According to Corel, "the evidence shows that Microsoft was not concerned about competition and wanted Corel, along with the rest of the world, to use the Ribbon in [Corel's software]." Id. at 8.

The evidence does show, as Corel argues, that Microsoft wanted to encourage third-party developers to adopt its ribbon interface in their software. But Microsoft sought adoption on its own terms. One key term was that developers were required to use Microsoft's official Windows 7 Ribbon APIs when implementing the ribbon. Rather than comply with this requirement, however, Corel decided to implement its own "homegrown" version of the ribbon functionality. Reply 10. The undisputed facts show that Microsoft invited Corel to participate in the 2009 licensing program. But the facts do not support Corel's position that Microsoft invited Corel to participate in the licensing program without obeying its terms.

Finally, Corel argues that its CorelCAD software was eligible for a license because CorelCAD did not compete with Microsoft Office. Opp'n 9. Microsoft concedes that CorelCAD was not a competing product. Reply 9. However, CorelCAD was not released until 2011. Id. By then, the 2009 licensing program had replaced the 2007 program. Under the 2009 program— unlike the 2007 program—Microsoft allowed competing products to license the ribbon interface, but it required those products to use the Windows 7 Ribbon APIs. Opp'n 6; Reply 10. CorelCAD did not do so. Reply 10. As such, CorelCAD—like Corel's other infringing software—did not have a license under the 2009 licensing program. And it did not have a license under the 2007 program because, when CorelCAD was released, the 2007 program was no longer available.

Since Corel did not have a license to practice the ribbon patents, Microsoft is entitled to summary judgment on Corel's fifth, sixth, ninth, and thirteenth affirmative defenses.

### ii. Eighth Affirmative Defense (License Agreement and/or Exhaustion)

As discussed above, the patent exhaustion doctrine provides that "the initial authorized sale

Case No.: 5:15-cv-05836-EJD
ORDER GRANTING MICROSOFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
8

of a patented item terminates all patent rights to that item." Bowman, 569 U.S. at 283 (quoting Quanta, 553 U.S. at 625).

According to Corel, Microsoft's right to sue for infringement of the ribbon patents was exhausted as a result of a series of licensing transactions. Opp'n 3. First, in 2007, Microsoft licensed the ribbon patents to a U.S. company called Codejock Software. Id. ▮

▮

▮

▮

▮ Corel Home Office is one of the products that Microsoft accuses of infringing the ribbon patents. See, e.g., Compl. ¶ 61.

Corel argues that, as a result of these transactions, Microsoft's rights were exhausted because ▮

▮." Opp'n 4.

However, Corel has failed to provide evidence to support its argument. As Microsoft notes, Corel has offered no "evidence that the toolkit provided by Codejock to Corel in fact embodied the asserted Ribbon patents." Reply 7. As the party opposing summary judgment on its exhaustion defense, Corel "must present actual evidence" that the Codejock toolkit "substantially embodies" the ribbon patents. Reply 8 (quoting Quanta, 553 U.S. at 638 and Crown Operations Int'l, Ltd. v. Solutia Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002)). The undisputed facts show that Corel has not provided any evidence of the contents of the Codejock toolkit. See, e.g., Reply Separate Statement ¶¶ 29–31, Dkt. No. 196-1. Without evidence on the record, the Court cannot evaluate whether the transactions Corel identifies resulted in exhaustion of Microsoft's rights. As such, Microsoft is entitled to summary judgment on Corel's eighth affirmative defense.

**C.      Counterclaim XXIV—Exceptional Case under § 285**

"The Patent Act's fee-shifting provision authorizes district courts to award attorney's fees to prevailing parties in 'exceptional cases.' " Octane Fitness, LLC v. ICON Health & Fitness, Inc.,

134 S. Ct. 1749, 1751 (2014) (quoting 35 U.S.C. § 285). "[T]o be a prevailing party, one must 'receive at least some relief on the merits' which 'alters the legal relationships of the parties.'" Former Employees of Motorola Ceramic Prods. v. United States, 336 F.3d 1360, 1364 (Fed. Cir. 2003) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001)) (citations and alterations omitted).

As discussed above, Corel has conceded validity and infringement. In addition, in this order, the Court grants summary judgment to Microsoft on all but one[8] of Corel's affirmative defenses and counterclaims. As such, Corel cannot be the "prevailing party," and Microsoft is entitled to summary judgment on Corel's counterclaim under 35 U.S.C. § 285.

### D.   '415 and '501 Patents

In its opposition brief, Corel clarified that its defenses and counterclaims do not apply to the '415 and '501 patents. Opp'n 3 n.2.

## IV.   CONCLUSION

Microsoft's motion for partial summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: December 11, 2017

EDWARD J. DAVILA
United States District Judge

---

[8] Microsoft has not moved for summary judgment on Corel's seventh affirmative defense under 35 U.S.C. § 287. That defense is related to the damages period for Corel's infringement. It is not related to Corel's liability. See MSJ 2 n.2. Even if Corel prevails on its seventh affirmative defense, it cannot be the "prevailing party" under § 287.