UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MICROSOFT CORPORATION,

Plaintiff,

v.

COREL CORPORATION, et al.,

Defendants.

Case No.  5:15-cv-05836-EJD

**ORDER REGARDING POST-TRIAL MOTIONS**

Re: Dkt. Nos. 329, 330, 331, 333

On February 13, 2018, following a three-day trial on notice, damages, and willfulness issues, the jury returned a verdict that Microsoft had not given Corel pre-suit notice of its design patents, Microsoft was entitled to $287,000 in damages, and that Corel had willfully infringed all of Microsoft's patents.  Dkt. No. 319.  Corel now moves for remittitur (Dkt. No. 329) and renews its motions for judgment as a matter of law that Microsoft is not entitled to disgorgement damages under 35 U.S.C. § 289 (Dkt. No. 330) and that Microsoft is barred from recovering damages under 35 U.S.C. § 284 and 35 U.S.C. § 289 (Dkt. No. 331).  Microsoft moves for attorneys' fees, costs, enhanced damages, and pre-judgment interest (Dkt. No. 333).  For the reasons discussed below, Corel's motion for remittitur (Dkt. No. 329) is GRANTED, Corel's renewed motions for judgment as a matter of law (Dkt. Nos. 330 and 331) are DENIED, and Microsoft's motion (Dkt. No. 333) is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

In 2015, Corel Software, LLC sued Microsoft for patent infringement in Utah.  *Corel Software, LLC. v. Microsoft Corp.*, No. 2:15-cv-00528-JNP-PWM (D. Utah July 27, 2015).  Corel

Case No.: 5:15-cv-05836-EJD
ORDER REGARDING POST-TRIAL MOTIONS

1

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Software, LLC is a separate legal entity from the two defendants in this case; however, all three

2   entities are owned the same private-equity firm.  Dkt. No. 153 at 2.

3       Microsoft initiated this case on December 19, 2015, alleging that Corel infringed nine

4   patents relating to graphical user interfaces in software applications: U.S. Patent Nos. 7,047,501

5   ("the '501 patent"), 5,715,415 ("the '415 patent"), 5,510,980 ("the '980 patent"), 8,255,828 ("the

6   '828 patent"), 7,703,036 ("the '036 patent"), D550,237 ("the D'237 patent"), D554,140 ("the

7   D'140 patent"), D564,532 ("the D'532 patent"), and D570,865 ("the D'865 patent") (collectively,

8   "the Asserted Patents").  Complaint ("Compl.") ¶¶ 29-129, Dkt. No. 1.  Corel answered on

9   February 17, 2016, denying all allegations of infringement, and contesting the validity of each of

10   the Asserted Patents.  Answer, Dkt. No. 28.  On May 23, 2016, Corel moved to amend its answer

11   to add a defense of express license to Microsoft's claim that Corel infringed the '980 patent.  Dkt.

12   No. 47.

13       On May 23, 2016, Corel moved for early partial summary judgment on its express license

14   defense.  Dkt. No. 49.  On January 12, 2017, the Court denied Corel's motion.  Dkt. No. 154.

15       Meanwhile, on November 8, 2016, Corel notified the Court that "[w]hile [it] believes

16   strongly in its defenses of non-infringement and invalidity, to properly develop and prove out

17   those defenses will simply cost more than the damages could rationally be in this case."  Dkt. No.

18   115 at 2.  The Court granted Corel leave to file a Second Amended Answer, in which Corel

19   admitted each of Microsoft's infringement allegations and withdrew various affirmative defenses,

20   including its invalidity defenses.  Dkt. Nos. 120, 121.

21       On January 12, 2017, Microsoft moved for partial summary judgment with respect to

22   Corel's remaining liability defenses.  Dkt. No. 170.  On December 11, 2017, the Court granted

23   Microsoft's motion, disposing of all liability issues in the case.  Dkt. No. 214.

24       The parties proceeded to trial on the remaining disputed issues: (1) whether Microsoft gave

25   pre-suit notice to Corel of any of the D'237, D'532, and D'532 patents;[1] (2) the proper amount of

26   

27   _____

[1] In its pretrial statement, Microsoft also identified pre-suit notice of the D'140 patent as a
disputed issue.  Dkt. No. 244.  However, Microsoft dropped this issue during trial, as the

28   Case No.: 5:15-cv-05836-EJD
ORDER REGARDING POST-TRIAL MOTIONS
2

damages for Corel's infringement of each of the Asserted Patents; and (3) whether Corel's infringement of the '828, '036, D'237, D'140, D'532, and D'532 patents was willful.[2]  *See* Dkt. No. 244.  On the eve of trial, the parties filed a joint stipulation further narrowing these issues, stipulating to damages for the '501, '415, and '980 patents and eliminating certain products from the case.[3]  Dkt. No. 302.

The Court held a jury trial on February 6, 7, and 9, 2018.[4]  Dkt. Nos. 304, 305, 310, 316, 318.  On February 13, 2018, the jury returned a verdict that (1) Microsoft had not given Corel pre-suit notice of the D'237, D'532, and D'532 patents, (2) Microsoft was entitled to $287,000 in damages, and (3) Corel had willfully infringed the '828, '036, D'237, D'140, D'532, and D'532 patents.  Dkt. No. 319.  The instant post-trial motions followed.

## II.    LEGAL STANDARDS

### A.    Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 permits a district court to grant judgment as a matter of law when "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury."  *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 604 (9th Cir. 2016) (quotation marks omitted).  The court must

---

infringing products were not using the design of the D'140 patent in 2009.  *See* Trial Tr. 534:9-538:21, 641:6-642:22, Dkt. No. 324.

[2] The parties also disputed, as a non-jury issue, whether Microsoft was entitled to enhanced damages and/or its costs, expenses, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285. *See* Dkt. No. 244.

[3] Specifically, the parties stipulated that:
1. Corel CAD 2017 is not accused of infringement by Microsoft in this litigation.
2. The damages for the '980 patent are $16,667.
3. The damages for the '501 patent are $50,000.
4. If final judgment is entered that Corel willfully infringed any patent:
   a. The damages for the '415 patent are $150,000.
   b. The damages for Corel's sales of Corel CAD 2014-2016 are $24,000.
5. If final judgment is entered that Corel did not willfully infringe:
   a. The damages for the '415 patent are $50,000.
   b. The damages for Corel's sales of Corel CAD 2014-2016 are $5,000.
6. The parties agree that they will not refer to the '980 patent, the '501 patent, the '415 patent, Corel CAD, or the stipulation at trial.

Dkt. No. 302.

[4] The Court also held proceedings on February 8, 2018 to hear argument on the parties' motions for judgment as a matter of law.  Dkt. No. 310.

Case No.: 5:15-cv-05836-EJD
ORDER REGARDING POST-TRIAL MOTIONS
3

United States District Court
Northern District of California

1  draw all reasonable inferences in favor of the nonmoving party.  *Reeves v. Sanderson Plumbing*

2  *Prods., Inc.*, 530 U.S. 133, 150 (2000).  "[T]he court should give credence to the evidence

3  favoring the nonmovant as well as that 'evidence supporting the moving party that is

4  uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested

5  witnesses.' "  *Id.* at 151 (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure

6  § 2529 at 300 (2d ed. 1995)).  However, the court "may not make credibility determinations or

7  weigh the evidence."  *Id.* at 150.

8    **B.**    **Enhanced Damages Pursuant to 35 U.S.C. § 284**

9      In a case of infringement, courts "may increase the damages up to three times the amount

10  found or assessed."  35 U.S.C. § 284.  In *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, the Supreme Court

11  held that § 284 "contains no explicit limit or condition" on when a district court may award

12  enhanced damages, but instead allows courts to "punish the full range of culpable behavior."  136

13  S. Ct. 1923, 1931, 1933, 195 L. Ed. 2d 278 (2016).  This "sort of conduct warranting enhanced

14  damages has been variously described in [Supreme Court] cases as willful, wanton, malicious,

15  bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Id.*

16  at 1932.  None of these behaviors (including willfulness) are prerequisites for or automatic

17  entitlements to enhanced damages; instead, "courts should continue to take into account the

18  particular circumstances of each case in deciding whether to award damages, and in what

19  amount."  *Id.* at 1933-34.  Nevertheless, enhanced damages are generally reserved for "egregious

20  cases of misconduct beyond typical infringement," such as those "typified by willful misconduct."

21  *Id.* at 1933, 1935.

22      In assessing the egregiousness of an actor's behavior, "culpability is generally measured

23  against the knowledge of the actor at the time of the challenged conduct."  *Id.* at 1933 (citation

24  omitted).  In addition, in *Read Corp. v. Portec, Inc.*, 970 F.3d 816, 826-27 (Fed. Cir. 1992), the

25  Federal Circuit enumerated eight factors that may guide an analysis of "the egregiousness of the

26  defendant's conduct based on all the facts and circumstances."  The *Read* factors include:

27          (1) whether the infringer deliberately copied the ideas or design of

28  Case No.: 5:15-cv-05836-EJD
    ORDER REGARDING POST-TRIAL MOTIONS
                        4

another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm.

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006).

### C.    Attorneys' Fees Pursuant to 35 U.S.C. § 285

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court explained that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." —— U.S. ——, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014).

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S.Ct. at 1756; *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) ("[W]e are mindful that the district court has lived with the case and the lawyers for an extended period.").  In considering the totality of the circumstances, the Supreme Court suggested that district courts could consider 'nonexclusive' factors it previously set forth concerning a similar provision in the Copyright Act, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)).  A movant must establish its entitlement to attorneys' fees under § 285 by a preponderance of the evidence.  *Id.* at 1758.

## III.    DISCUSSION

### A.    Corel's Motion for Remittitur (Dkt. No. 329)

Corel moves the Court to remit the jury's damages award to $99,000, less any amount the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Court holds that Microsoft is not entitled to recover in view of Corel's renewed motions for

2    judgment as a matter of law.  Dkt. No. 329.  Microsoft does not oppose this motion.  Dkt. No. 335.

3          At trial, Microsoft's damages expert testified that, if the jury concluded that Microsoft did

4    not provide Corel with pre-suit notice of the D'237, D'532, and D'532 patents, Microsoft was

5    entitled to $99,000 in damages.  Trial Tr.[5] 373:11-18; *see also* Declaration of Megan Wood

6    ("Wood Decl."), Exs. A and B, Dkt. Nos. 329-2 and 329-3.  This number was the sum of (1)

7    $74,000 for disgorgement of Corel's profits for sales of Corel Home Office received from

8    December 18, 2015 (the day Microsoft filed suit) through February 13, 2018, and (2) $25,000 as a

9    reasonable royalty for Corel's infringement of the Utility Design Patents occurring from

10   December 18, 2009 (6 years before the date Microsoft filed suit) to February 13, 2018.  In view of

11   this testimony, the jury's damages award was excessive.  Accordingly, the Court agrees with Corel

12   and Microsoft and will remit the jury's damages award to $99,000.[6]

13   **B.    Corel's Renewed Motion for Judgment as a Matter of Law that Microsoft is Not
            Entitled to Disgorgement Damages Under 35 U.S.C. § 289 (Dkt. No. 330)**

14   

15          Corel renews its motion for judgment as a matter of law that Microsoft is not entitled to

16   disgorgement damages under 35 U.S.C. § 289.  Dkt. No. 330.  Corel argues that the D'237, D'140,

17   D'532, and D'532 patents (collectively, "the Design Ribbon Patents") claim a "display screen" as

18   their article of manufacture and, because Microsoft only presented evidence of profits from a

19   software product (Corel Home Office) and not a physical "display screen," it cannot recover

20   disgorgement damages.  *Id*.  Microsoft disagrees.  Dkt. No. 336.

21          35 U.S.C. § 289 provides that:

22                Whoever during the term of a patent for a design, without license of
                  the owner, (1) applies the patented design, or any colorable imitation
23                thereof, to any article of manufacture for the purpose of sale, or (2)
                  sells or exposes for sale any article of manufacture to which such
24                design or colorable imitation has been applied shall be liable to the

25   _____

26   [5] "Trial Tr." refers collectively to the trial transcripts located at Dkt. Nos. 321 (for pages 1-225),
     322 (for pages 226-426), 323 (for pages 427-530), 324 (for pages 531-696) and 325 (for pages
     697-713).

27   [6] As discussed below, this amount need not be further reduced in view of the Court's rulings on
     Corel's renewed JMOLs.  *See* Sections III.B and III.C, *infra*.

28   Case No.: 5:15-cv-05836-EJD
     ORDER REGARDING POST-TRIAL MOTIONS

1

2

owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

Determining a damages award under § 289 "involves two steps.  First, identify the 'article of manufacture' to which the infringed design has been applied.  Second, calculate the infringer's total profit made on that article of manufacture."  *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434, 196 L. Ed. 2d 363 (2016).  As the Supreme Court recently explained, "article of manufacture" has a "broad meaning:"

> An "article" is just "a particular thing."  J. Stormonth, A Dictionary of the English Language 53 (1885) (Stormonth); *see also* American Heritage Dictionary, at 101 ("[a]n individual thing or element of a class; a particular object or item").  And "manufacture" means "the conversion of raw materials by the hand, or by machinery, into articles suitable for the use of man" and "the articles so made." Stormonth 589; *see also* American Heritage Dictionary, at 1070 ("[t]he act, craft, or process of manufacturing products, especially on a large scale" or "[a] product that is manufactured").  An article of manufacture, then, is simply a thing made by hand or machine.

*Id.*

In view of these principles, Corel's arguments are not persuasive.  As an initial matter, they are waived.  Corel has already admitted that its products—including Corel Home Office—infringe the Design Ribbon Patents.  Second Amended Answer ("SAA"), Dkt. No. 121, at ¶¶ 102, 109, 116, 123.  Thus, Corel has already admitted that there exists an "article of manufacture" to which the patented designs of the Design Ribbon Patents have been applied.

Moreover, even if the Court were to consider Corel's arguments on the merits, they do not compel a contrary result.  Software is "a thing made by hand or machine," and thus can be an "article of manufacture."  *Samsung*, 137 S. Ct. at 434.  Thus, Microsoft is not precluded, as a matter of law, from disgorgement damages because the infringing article of manufacture is a software product.

Corel's focus on the claim language of the Design Ribbon Patents is misplaced.  The Design Ribbon Patents all claim "[t]he ornamental design for a user interface for a portion of a display screen, as shown and described . . . ."  D'237 patent, claim; D'140 patent, claim; D'532 patent, claim; D'532 patent, claim.  Thus, the Design Ribbon Patents claim a design for a "user

United States District Court
Northern District of California

interface."  It is certainly possible to "appl[y] [this] patented design" to the user interface of a software product (and therefore infringe), which is precisely what Corel admitted it did in Corel Home Office.[7]  *See* SAA ¶¶ 102, 109, 116, 123.  Accordingly, Microsoft is not precluded from disgorgement damages because its "article of manufacture" is a software product.  Corel's motion is DENIED.

### C.    Corel's Renewed Motion for Judgment a Matter of Law Barring Microsoft from Recovering Both Section 284 and Section 289 Damages (Dkt. No. 331)

Corel renews its motion for judgment as a matter of law that Microsoft is not entitled to recover from Corel both reasonable royalty damages under 35 U.S.C. § 284 and disgorgement damages under 35 U.S.C. § 289 for Corel's sales of Corel Home Office.  Dkt. No. 331.  Corel argues that to hold otherwise would violate Federal Circuit law, which, according to Corel, holds that patentee asserting both design and utility patents against the same product can only recover one type of damages.  *Id*.  Microsoft disagrees.  Dkt. No. 337.

In *Catalina Lighting, Inc. v. Lamps Plus, Inc*., 295 F.3d 1277, 1291 (Fed. Cir. 2002) (the primary case which Corel relies on in its motion), the Federal Circuit addressed the question of "whether a patentee may recover infringer profits and a reasonable royalty when both a design patent and a utility patent have been infringed by the sale of a single product."  The court concluded that "once [a patentee] receives profits under § 289 for each sale, [the patentee] is not entitled to a further recovery from the same sale because the award of infringer profits under § 289 also constitutes 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'"  *Id*. (quoting 35 U.S.C. § 284).

Applied here, this principle does not warrant a reduction of Microsoft's damages.

_____

[7] At the hearing, Microsoft also pointed out that § 289, by its plain language, contemplates damages where a "patented design" is applied to "*any* article of manufacture," separate from the language of the claim.  The Court also finds this reasoning persuasive, with the caveat that it may sometimes be the case that a "patented design" is claimed so narrowly that it cannot be "applie[d]" to certain "article[s] of manufacture."  Such is not the case here, though—the "patented design" of the Design Ribbon Patents is broad enough that it could be "applie[d]" to software.

United States District Court
Northern District of California

Although it is true that, under *Catalina Lighting*, a patentee cannot recover both § 284 and § 289 damages for the same *sale* of an infringing product, the jury's damages award does not run afoul of this principle.  Microsoft was entitled to recover reasonable royalty damages beginning in 2009, but, because the jury found that Microsoft did not give pre-suit notice of the Design Ribbon Patents, Microsoft could only recover disgorgement damages beginning in 2015.  Thus, for the period running from December 18, 2009 to December 17, 2015, Microsoft could only recover reasonable royalty damages.  Microsoft sought and the jury awarded precisely this in the amount of $25,000, which is the amount it would have cost Corel to design around Microsoft's patents.

The only potential period of double recovery, then, could have occurred during the period running from December 18, 2015 to February 13, 2018.  There, Microsoft was entitled to recover either reasonable royalty damages or disgorgement damages, and, under *Catalina Lighting*, it had to choose one.  Microsoft did precisely this: it sought and the jury awarded $74,000, which were the total profits for Corel Home Office during that period.  Microsoft's final ask, then, was just the sum of these $74,000 in profits, plus the $25,000 reasonable royalty that it recovered from infringing sales prior to December 18, 2015.  Thus, because Microsoft did not recover both types of profits for any of its infringing sales, the jury's award does not fun afoul of *Catalina Lighting*.  Corel's motion is DENIED.

**D.   Microsoft's Motion for Attorneys' Fees, Costs, Enhanced Damages, and Pre-Judgment Interest (Dkt. No. 333)**

Microsoft moves for attorneys' fees, costs, enhanced damages, and pre-judgment interest.  Dkt. No. 333.  The Court addresses each of these issues, beginning with enhanced damages.[8]

---

[8] The Court notes that the parties addressed attorneys' fees before enhanced damages in their briefing.  However, the Court finds it more appropriate to first address the question of enhancing damages, as many other courts in this District have done.  *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 09-CV-05235-MMC, 2017 WL 130236 (N.D. Cal. Jan. 13, 2017); *Radware, Ltd. v. F5 Networks, Inc*., No. 5:13-CV-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016); *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, No. 13-CV-05038 NC, 2016 WL 4208236 (N.D. Cal. Aug. 10, 2016); *AAT Bioquest, Inc. v. Texas Fluorescence Labs., Inc.*, No. 14-CV-03909-DMR, 2015 WL 7708332 (N.D. Cal. Nov. 30, 2015).

Case No.: 5:15-cv-05836-EJD
ORDER REGARDING POST-TRIAL MOTIONS
9

United States District Court
Northern District of California

### i.   Enhanced Damages

Under 35 U.S.C. § 284, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed."  This is a punitive measure, intended to punish conduct of the sort that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo*, 136 S. Ct. at 1932.  At trial, the jury found that Corel willfully infringed Microsoft's patents.  Dkt. No. 319.  Corel does not challenge this finding.  *See* Dkt. No. 339.  Thus, the Court's sole task at this stage is to assess, in light of Corel's willful infringement and all of the other relevant circumstances of this case, the extent to which (if any) damages should be enhanced under § 284.

Microsoft argues that the Court should award enhanced damages in light of the jury's willfulness finding and the particular circumstances which underlie it.  In particular, Microsoft emphasizes that Corel set out to copy Microsoft Office, despite warnings from Microsoft and HP, a Corel customer.[9]  Motion for Attorneys' Fees, Costs, Enhanced Damages, and Prejudgment Interest ("Mot."), Dkt. No. 333, at 5-8.  Microsoft also argues that the *Read* factors support enhancing damages, namely: (1) Corel set out to copy the entirety of the Ribbon interface; (2) Corel presented no good faith belief of non-infringement or invalidity at trial; (3) Corel engaged in litigation misconduct by refusing to make a non-zero settlement offer; (4) Corel is not a small company and its revenue for the accused products ███████████; (5) this was not a close case; (6) Corel's infringement began as early as 2009 and continued through trial in 2018; (7) Corel presented no evidence that it took remedial action; and (8) Corel was motivated by economic pressures.  Mot. 19-21.

Corel responds that it had a good faith belief that it could use the Ribbon, as Microsoft had been actively encouraging adoption of Ribbon-like user interfaces through its 2007 licensing program.  Opposition to Motion for Attorneys' Fees, Costs, Enhanced Damages, and Prejudgment

---

[9] Microsoft first makes these arguments in support of its request for attorneys' fees, and then argues that enhancement is warranted "[f]or many of the same reasons enumerated above with respect to awarding attorneys' fees."  Mot. 19.  Corel reuses its arguments in a similar way.  Opp. 12 n.7.  Thus, the Court considers Microsoft's arguments and Corel's responses in its assessment of both issues.

Case No.: 5:15-cv-05836-EJD
ORDER REGARDING POST-TRIAL MOTIONS
10

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Interest ("Opp."), Dkt. No. 339, at 8-9.  Corel also responds that it was reasonable for it to

2  continue to sell its infringing products after Microsoft filed suit and even after Corel stipulated to

3  infringement and validity because it believed this was "a very small matter," and "with [its] great

4  relationship with Microsoft, the easiest course of action would be to sit down and figure out what

5  a fair price would be to resolve the issue."  Trial Tr. 574:25-575:7.  Corel also disputes that its

6  litigation conduct was unreasonable.  Opp. 8-12.

7         The Court agrees with Microsoft that some enhancement of damages is warranted.  There

8  is no dispute that Corel willfully infringed Microsoft's patents.  In addition, the evidence in the

9  record suggests that Corel's efforts to copy Microsoft's Ribbon interface were deliberate, and that

10  Corel at least had some awareness that it could be infringing Microsoft's intellectual property in

11  the process.  For example, an internal Corel document discussing the "strategy behind Corel Home

12  Office" noted that "[t]he gradual, but steady, uptake of Microsoft Office 2007, showed us that

13  there might be an opportunity . . . if we were to introduce a produce with a user experience

14  familiar to users of Office 2007."  EX-48.002.  Once implemented, Corel characterized Corel

15  Home Office as a "copy [of] MSO [Microsoft Office] 2007,"  EX-23.001, and a product that is

16  "just about exactly like MS Office" but available "at a fraction of the price," EX-32.006-007.

17  Corel touted at trial that it had a close, longstanding relationship with Microsoft—in light of this,

18  it is difficult to believe that Corel had no awareness that the features it was copying were patented.

19  *See, e.g.*, Trial Tr. 553:5-554:11 (Corel CEO describing how Corel has been in a relationship with

20  Microsoft "for multiple decades" and the two companies "have a great working relationship").

21         Nevertheless, when pressed about its state of mind at the time, Corel seemed nonchalant, if

22  not careless, about the possibility of infringement.  For example, Corel at one point asked Ability

23  if "someone [was] doing due diligence on the[] general risk to patent and trademark lawsuit[.]"

24  EX-38.005.  Ability responded that "they looked briefly at the legality of the ribbon UI a long time

25  back but decided they were too small for MS [Microsoft] to be concerned with."  EX-73.004.

26  Concerns were also raised externally, as one Corel email in 2009 notes that "concerns were raised

27  again [by HP] about potential lawsuits and patent infringements of the MSFT-like ribbon in

28  Case No.: 5:15-cv-05836-EJD

ORDER REGARDING POST-TRIAL MOTIONS

United States District Court
Northern District of California

1    CHO."  EX-12.001.  Despite this, Corel proceeded to sell Corel Home Office.

2         Further, even if Corel did not initially appreciate the gravity of its actions, there eventually

3    did come a time when Corel was aware that its products were infringing Microsoft's patents.  At

4    trial, a Microsoft employee testified that she informed Corel in 2009 that "Corel Home Office . . .

5    infringed some of Microsoft's patents and IP."  Trial Tr. 319:15-320:24.  In December 2015,

6    Microsoft filed the instant lawsuit, identifying the infringed patents by number.  Dkt. No 1.

7    Roughly one year later, Corel admitted that these patents were valid and infringed.  Dkt. No. 121.

8    Nevertheless, throughout this entire time, Corel continued with its relatively nonchalant attitude: it

9    continued to sell its infringing products, and made no effort to redesign them.

10        At trial, Corel's CEO testified that Corel made no attempt to redesign or stop selling Corel

11   Home Office because this "seemed to be a very small matter" and he figured that "the easiest

12   course of action would be to sit down and figure out what a fair price would be for a license to

13   resolve the issue."  Trial Tr. 574:25-575:7.  Corel was entitled to make this business decision, but

14   it proceeded at its own peril.  Microsoft, as the property owner, was entitled to demand whatever

15   price it felt it deserved for its patents, or even refuse to license them entirely.  *Cf. United States v.*

16   *Colgate & Co.*, 250 U.S. 300, 307, 39 S. Ct. 465, 468, 63 L. Ed. 992 (1919) (discussing "the long

17   recognized right . . . to exercise [one's] own independent discretion as to parties with whom he

18   will deal").  In choosing to wait for a "fair price" which may never come, Corel ran the risk that it

19   may be on the hook for the continued, willful infringement which it engaged in the meantime.  Its

20   business decision does not absolve its conduct for the purposes of § 284.  In sum, considering the

21   entire period from the development of Corel Home Office to the present, Corel's nonchalance

22   and—eventually—knowing indifference towards Microsoft's patent rights is egregious enough

23   that the Court finds that the jury's award should be enhanced.

24        That said, at the same time, the Court is not convinced that the damages should be

25   enhanced up to the full treble multiplier.  As the Supreme Court noted, enhanced damages is a

26   punitive measure, intended to punish conduct of the sort that is "willful, wanton, malicious, bad-

27   faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo*,

28   Case No.: 5:15-cv-05836-EJD

136 S. Ct. at 1932.  While Corel's willful infringement was blatant, the Court is not convinced that it rises to the level of "malicious," "flagrant," or "characteristic of a pirate."  Instead, as described above, Corel's attitude seems to have more of an air of carelessness or indifference—it knew that patent infringement was a "concern," EX-12.001, but proceeded anyways, assuming or hoping that this would be a "small" matter in Microsoft's eyes.  Trial Tr. 574:25-575:7 (Corel CEO testifying that "seemed to be a very small matter"); *see also* EX-73.004 (Ability responding to Corel that "they looked briefly at the legality of the ribbon UI a long time back but decided they were too small for MS [Microsoft] to be concerned with").  As such, Corel's actions do not seem to have the overtly malicious character that has incurred enhanced damages in other cases.  *See, e.g.*, *Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*, 198 F. Supp. 3d 1343, 1353 (S.D. Fla. 2016), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017) (trebling damages where the accused infringer failed to obtain an opinion of counsel, attempted to conceal the infringement, and copied the patentee's product); *Goodwall Const. Co. v. Beers Const. Co.,* 991 F.2d 751, 758 (Fed. Cir. 1993) (trebling damages where the accused infringer willfully copied the patented process and attempted to conceal information from its patent attorney when seeking an infringement opinion).  Accordingly, the Court will decline to award full, treble damages.

In light of the foregoing, the Court finds that some but not a complete enhancement of damages is warranted under § 285.  Accordingly, the Court will double the $25,000 in damages which the jury awarded for Microsoft's utility patents.  Adding this to the adjusted award of $99,000 (*see* Section III.A, *supra*), Microsoft is entitled to $124,000 in damages.

### ii.   Attorneys' Fees and Costs

#### a.  Exceptional Case

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  The parties do not dispute that, here, Microsoft is the prevailing party.  *See* Mot. 3-19; Opp. 7-18.  Thus, the issue before the Court is whether this is an "exceptional case[]" justifying an award attorneys' fees.  A case can be "exceptional" either "with respect to the substantive strength of [Microsoft's] litigating position . . . or the unreasonable

Case No.: 5:15-cv-05836-EJD
ORDER REGARDING POST-TRIAL MOTIONS

13

1    manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756.  "[T]here is no

2    precise rule or formula for making these determinations, but instead equitable discretion should be

3    exercised." *Id*.

4         Here, Microsoft offers several theories as to why this was an exceptional case: (1) Corel

5    willfully infringed its patents; (2) Corel acted unreasonably with respect to settlement; and

6    (3) Corel acted unreasonably in litigating this case.  Mot. 3-13.  Among other things, Microsoft

7    highlights that Corel set out to copy Microsoft Office, ignored warnings that it was infringing, and

8    had no good faith defenses for infringement.  *Id*. at 4-9.  Microsoft also argues that Corel behaved

9    unreasonably during this case by refusing to engage in settlement, unreasonably pursuing

10   affirmative defenses and counterclaims, and being unhelpful in pursuing foreign discovery.  *Id*. at

11   9-13.

12        Corel disagrees that neither its infringement (including willfulness) nor the manner in

13   which it litigated this case are exceptional.  Opp. 7-11.  In particular, Corel argues that it had a

14   good faith belief that it could adopt a Ribbon-like interface in its products and that its decision to

15   continue selling its infringing products was reasonable.  Opp. 7-9.  Corel also points out that it

16   reasonably cooperated in settlement and that the way it pursued its claims and defenses was

17   reasonable.  *Id*. at 9-12.  Corel also emphasizes that it voluntarily stipulated to infringement and

18   validity to streamline the case and that, ultimately, the results of the trial were mixed: Microsoft

19   prevailed in willfulness, but Corel prevailed in showing there was no pre-suit notice.  *Id*.

20        After reviewing each of Microsoft's theories and considering this case in its totality, the

21   Court finds that this is not an exceptional case.  Although willfulness can be a "compelling"

22   indicator that a case is "exceptional" under § 285, *S.C. Johnson & Son, Inc. v. Carter-Wallace,*

23   *Inc*., 781 F.2d 198, 201 (Fed. Cir. 1986), it does automatically make it so.  *Brooktree Corp. v.*

24   *Advanced Micro Devices, Inc*., 977 F.2d 1555, 1582 (Fed. Cir. 1992).  As one district court has

25   recently explained:

26           A finding of willful infringement for purposes of enhanced damages
              does not require a finding that a case is exceptional under § 285.

27           *Brooktree Corp. v. Advanced Micro Devices, Inc*., 977 F.2d 1555,

28   Case No.: 5:15-cv-05836-EJD
     ORDER REGARDING POST-TRIAL MOTIONS

United States District Court
Northern District of California

1582 (Fed. Cir. 1992). Nevertheless, "the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner." *Golight, Inc. v. Wal-Mart Stores, Inc*., 355 F.3d 1327, 1340 (Fed. Cir. 2004); *see Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp*., 459 F.3d 1311, 1321 (Fed. Cir. 2006) ("Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct . . . .").

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2017 WL 4038883, at *3 (E.D. Tex. Sept. 13, 2017).  Here, as discussed above, it is clear that Corel willfully infringed Microsoft's patents, and it did so with a certain degree of carelessness or indifference.  *See* Section III.D.i, *supra*.  However, Corel's willful infringement does not completely rise to the level of overt maliciousness.  *See id*.  As such, Corel's willful infringement, in and of itself, is not sufficient to render this an exceptional case.  Something more is needed.

None of the other aspects of this case which Microsoft highlights pushes this case over the line.  First, Corel's actions with respect to settlement, considered alone or in combination with the other circumstances of this case, do not make this case exceptional.  A review of the parties' settlement history confirms that both parties actively engaged in settlement discussions, and acted reasonably in their negotiations:  Within three months of Microsoft filing suit, Corel sent Microsoft detailed estimates illustrating that the revenues at stake in this litigation were not worth the fight and suggesting the parties drop the case.  Declaration of Sabrina Chang ("Chang Decl."), Ex. 2, Dkt. No. 338-10.  Microsoft declined.  Chang Decl., Ex. 3, Dkt. No. 338-12.  The parties had a similar exchange four months later.  Chang Decl., Exs. 6 and 7, Dkt. Nos. 338-14 ad 338-16.  Then, roughly one year after the suit began, Corel shared detailed financial information with Microsoft, and Microsoft responded with its first monetary settlement offer of ████████.  *See* Chang Decl., Ex. 12, Dkt. No. 338-24; Declaration of Jonathan Lamberson ("Lamberson Decl."), Ex. C, Dkt. No. 332-9.  Corel rejected this offer, reasoning that it reflected a ████ royalty rate, which was far from reasonable in its mind.  Lamberson Decl., Ex. D, Dkt. No. 332-10.  Over the course of the next year, the parties continued to exchange settlement offers up until the eve of

United States District Court
Northern District of California

1    trial.[10]  Lamberson Decl., Exs. C and D; Chang Decl., Exs. 14 and 15, Dkt. Nos. 338-28 and 338-

2    30.  However, Microsoft continued to insist that, as a part of any settlement, Corel agree to

3    stipulate to willfulness, which Corel was not willing to do.  *See, e.g.*, Chang Decl., Exs. 14 and 15.

4    The parties eventually reached impasse.

5           Nothing about the parties' behavior during these negotiations was unreasonable.  Given the

6    small amount of money that Corel estimated (and then trial confirmed) was at issue in this case, it

7    was not unreasonable for Corel to insist on a walk-away settlement, even up until a late stage in

8    this case.  In addition, given that a stipulation of willfulness not only could have had powerful

9    consequences for the issue of enhanced damages in this case but also for issues and bargaining

10   positions in the Utah litigation, it was not unreasonable for Corel to refuse to agree to this term.

11   Accordingly, nothing about its behavior during settlement makes this case exceptional.

12          Second, Corel's actions during litigation, considered alone or in combination with the

13   other circumstances of this case, do not make this case exceptional.  Microsoft complains that

14   Corel was unreasonably stubborn in pursuing its counterclaims and defenses.  Mot. 11-12.  The

15   Court disagrees.  Although the Court ultimately disagreed Corel's affirmative defenses and

16   counterarguments on summary judgment, Dkt. No. 214, they were neither frivolous nor brought in

17   bad faith.  *See In re Protegrity Corp.*, No. 3:15-MD-02600-JD, 2017 WL 747329, at *3 (N.D. Cal.

18   Feb. 27, 2017) ("A 'losing argument is not a relevant consideration; rather, the focus must be on

19   arguments that were frivolous or made in bad faith.'") (quoting *Stragent, LLC v. Intel Corp.*, Case

20   No. 6:11-cv-421, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014) (Dyk, Circuit Judge, sitting

21   by designation)).  The only issue that comes close is Corel's continued pursuit of its express



22   _____

23   [10]

<div style="writing-mode: vertical-rl">United States District Court
Northern District of California</div>

1   license defense for the '980 patent.  *See* Dkt. No. 187.  The Court denied Corel's early motion for

2   partial summary judgment that Corel had an express license, Dkt. No. 154, but, in opposing

3   Microsoft's later motion for summary judgment on this defense, Corel recycled some of the same

4   arguments that it used in its earlier motion, Dkt. No. 187.  As the Court noted in its summary

5   judgment order, these recycled arguments "amount[ed] to an improper motion for

6   reconsideration."  Dkt. No. 214 at 3.  However, although Corel should not have made these

7   arguments, such tactics are often attempted by vigorous litigants and this isolated incident is not

8   enough, by itself or in combination with other circumstances of this case, to make this case

9   exceptional.

10       Microsoft also complains that Corel did not assist it in getting foreign discovery, including

11  that Corel refused to accept service of the complaint for its Canadian parent and refused to help

12  get voluntary discovery from Ability and Graebert.  *Id*.  Although Corel provides no response or

13  explanation for its refusal, refusing to *help* an opponent get third-party discovery is far from

14  litigation misconduct.  Accordingly, this too, by itself or in combination with other circumstances

15  of this case, is not enough to make this case exceptional.

16       Instead, cutting against Microsoft's complaints of unreasonable litigation conduct is the

17  fact that Corel stipulated to infringement and dropped its invalidity defenses early in the case.

18  Such an open effort to reduce costs and streamline litigation is rare in patent cases, especially

19  when there are other issues that still remain to be tried.  In addition, even though Corel did not

20  prevail in its early motion for partial summary judgment on the express license issue, this too

21  reflects an attempt to streamline costs and issues early in the case.  Accordingly, Corel's efforts to

22  reduce issues and costs weigh against finding that it acted unreasonably such that this case could

23  be considered exceptional.

24       In sum, because Corel's willfulness in and of itself is not enough to render this case an

25  exceptional case and because no other circumstances, when considered in combination with

26  willfulness, are sufficient to make this case exceptional, this is not an exceptional case.  As such,

27  Microsoft is not entitled to fees or costs.

28  Case No.: 5:15-cv-05836-EJD
ORDER REGARDING POST-TRIAL MOTIONS

United States District Court
Northern District of California

**b.  Reasonableness of Fees and Costs**

Because Microsoft is not entitled to fees or costs, the Court need not reach this issue. Microsoft's motion for fees and costs is DENIED.

**iii.  Pre-Judgment Interest**

The purpose of awarding prejudgment interest is to compensate the patentee for "the foregone use" of the royalty payments that the patentee never received. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983). This award "is intended to cover the lost investment potential of funds to which the plaintiff was entitled." *Nelson v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994). Although *Devex* addressed a royalty award under § 284, the Federal Circuit has also upheld awards of prejudgment interest on awards of infringer's profits under § 289. *See Catalina Lighting*, 295 F.3d at 1292. The Court has considerable discretion in awarding prejudgment interest. *See Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

Here, Microsoft requests prejudgment interest for the '036 patent, '828 patent, and Ribbon Design Patents.[11] Mot. 22-23. Microsoft suggests that the Court use the U.S. Treasury Bill rate, compounded annually. *Id*. at 23. It proposes that the Court calculate interest from the issue date of the '036 and '828 patents, and from the filing date of the Complaint for the Design Ribbon Patents. *Id.* Corel does not oppose any of these requests. *See* Opp. 18.

Based on this non-opposition, the Court GRANTS Microsoft's request. Microsoft is entitled to prejudgment interest for the '036 patent, '828 patent, and Ribbon Design Patents, calculated according to the treasury bill rate, compounded annually.

**IV.  ORDER**

For the foregoing reasons:

1.      Corel's motion for remittitur (Dkt. No. 329) is GRANTED. The jury's original award will be reduced to $99,000.

---

[11] Microsoft has withdrawn its request for prejudgment interest for the '501, '415, and '980 patents, as well as for the CorelCAD product. Reply in Support of Motion for Attorneys' Fees, Costs, Enhanced Damages, and Prejudgment Interest ("Reply"), Dkt. No. 344, at 10.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.     Corel's renewed motion for judgment as a matter of law that Microsoft is not entitled to disgorgement damages under 35 U.S.C. § 289 (Dkt. No. 330) is DENIED.

3.     Corel's renewed motion for judgment as a matter of law that Microsoft is barred from recovering damages under 35 U.S.C. § 284 and 35 U.S.C. § 289 (Dkt. No. 331) is DENIED.

4.     Microsoft's motion attorneys' fees, costs, enhanced damages, and pre-judgment interest (Dkt. No. 333) is GRANTED IN PART and DENIED IN PART.  Pursuant to 35 U.S.C. § 284, the jury's damages award is enhanced to $124,000 and the Court awards prejudgment interest for the '036 patent, '828 patent, and Ribbon Design Patents, calculated according to the treasury bill rate, compounded annually.  Microsoft is not entitled to recover attorneys' fees or costs under 35 U.S.C. § 285.

**IT IS SO ORDERED.**

Dated: May 8, 2018

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California